U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2023 MAR 10 AM 11: 32

CLERK

BY ___*VHW*___
DEPUTY CLERK

### UNITED STATES DISTRICT COURT
### FOR THE
### DISTRICT OF VERMONT

MATTHEW HENDERSON,

**PLAINTIFF**

v.

CATALYST SOFTWARE, INC. &
CATALYST SOFTWARE CORPORATION,

**DEFENDANTS.**

Case No. 2:23-cv-48

>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>

## *COMPLAINT AND JURY DEMAND*

The PLAINTIFF, Matthew Henderson, brings this action against Defendants Catalyst Software, Inc. and Catalyst Software Corporation for claims of wrongful termination from employment (breach of implied employment contract), breach of the covenant of good faith and fair dealing, and *promissory estoppel*. He seeks judgment against the defendants, as well as a monetary award and other damages as follows:

### Jurisdiction & Venue

1. Plaintiff Matthew Henderson is a resident of Portland, Cumberland County, Maine.

2. Defendants Catalyst Software Inc., and Catalyst Software Corporation are incorporated in the State of Delaware; they are not registered to do business in Vermont.

3. The two corporate entities are located in New York City in New York State.

4. The corporate entities employed the plaintiff during 2022 and 2023 as an "Enterprise Account Executive."

5. While defendants employed the plaintiff he resided in Winhall town, Bennington County, Vermont.

6. He continued to work from his Vermont residence throughout his tenure as defendants' employee.

7. Subject Matter Jurisdiction is proper under Diversity of Jurisdiction because the parties reside in two different states and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332.

## Background

8. Prior to defendants employing the plaintiff, he had been a successful sales leader in the technology and human resources industries where he significantly exceeded annual sales quotas, implementing his unique skills in strategic planning, management team development and negotiation for his employers.

9. The defendants paid Mr. Henderson a substantial salary and benefits in several forms of insurance, unlimited paid time off, parental leave (100% paid), and company stock options, among other benefits.

10. In October 2022, defendants' management informed plaintiff and other similarly-situated sales employees that all salespersons were not "meeting targets."

11. Around the same time, defendants' management promised both a performance "grace period" until the end of January 2023, and "performance improvement plans" for all employees.

### COUNT ONE:
### WRONGFUL TERMINATION
### (BREACH OF IMPLIED EMPLOYMENT CONTRACT)

12. Plaintiff incorporates paragraphs 1-11 into this claim.

13. Under Vermont law, an employer's employee fairness provisions and practices may constitute an implied employment contract between the employer and its employees.

14. During the hiring process, defendants indicated that, as their employee, the plaintiff would receive its established, generous employee compensation and benefits programs.

15. Defendants also guaranteed during the hiring process that they would provide plaintiff with robust training and onboarding materials.

16. His compensation was based on salary with additional commissionable income based on sales.

17. His benefits included family health, dental, and vision insurance, "unlimited" paid time off," monthly "company-wide mental health days" and "parental leave - 100% PAID" that provided "10 weeks of bonding time for secondary caregiver; 14 weeks of bonding time for primary caregiver; and 1 month transition period work at 50%" plus educational benefits, stipends for remote work, monthly mental health and monthly fitness, credit for lunch on Tuesdays, and company stock.

18. The plaintiff accepted defendants' offer on the terms and began work.

19. These employment provisions were memorialized in communications with defendants' managers prior to the plaintiff's acceptance of them in April 2022.

20. Defendants also provided the plaintiff with its employee handbook.

21. The handbook as well as its other employee fairness measures constituted an implied employment contract between the plaintiff and them.

22. In October 2022, plaintiff indicated to the managers that his spouse was pregnant with a child.

23. In December 2022, plaintiff's new supervisor questioned whether plaintiff could be successful with defendants as an employee if he were also a parent.

24. On January 3, 2023, plaintiff inquired about the logistics of paternity leave with defendants' Human Resources officer.

25. Two days later, defendants fired plaintiff, nine months after hiring him, claiming that his performance was inadequate.

26. Defendants provided no specifics, evidence or prior indication of the claim about his performance; nor did defendants provide any warnings, counseling or consultations prior to firing him.

27. Defendants also failed to provide the training and onboarding it promised to plaintiff upon hiring.

28. Defendants' employment fairness practices included "performance improvement plans" prior to taking adverse actions against employees, its usual management tool outlining specific, ongoing concerns regarding an employee's job performance.

29. Defendants' dismissal of the plaintiff without providing any of its employee fairness measures violated its employee fairness provisions and standard practices.

30. Defendants breached the implied employment contract between the parties, causing a broad array of negative impacts upon the plaintiff and his family, including loss of income and benefits, career setback and damage, emotional distress, as well as pain and suffering.

31. For defendants' breach of the implied employment contract between the parties, plaintiff demands judgement against them and an award of monetary damages for loss of income and benefits, company stock, career setback and damage, emotional distress, as well as pain and suffering.

## COUNT TWO:
## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

32. The plaintiff incorporates paragraphs 1-31 into this claim.

33. Every Vermont contract contains an implied covenant of good faith and fair dealing.

34. An employer's breach of the covenant of good faith and fair dealing means the employer acted in bad faith.

35. An employer's breach of the covenant of good faith and fair dealing also means the employer acted with reckless disregard of the employee's rights.

36. The plaintiff's employment rights are defined, in part, by the implied employment contract between the employer and employee.

37. In October 2022, plaintiff indicated to defendants' managers that his spouse was pregnant with a child, and on January 3, 2023, plaintiff inquired about the logistics of paternity leave with defendants' Human Resources officer.

38. Within days of notice, the defendants fired the plaintiff.

39. Defendants' actions disregarded the plaintiff's rights.

40. Defendants' actions breached the covenant of good faith and fair dealing.

41. The plaintiff demands judgment against defendants for breach of the covenant of good faith and fair dealing and an award of compensatory and punitive damages as well as court costs, interest, attorney's fees and other damages determined by the Court and/or the jury.

## COUNT THREE:
## *PROMISSORY ESTOPPEL*

42. The plaintiff incorporates paragraphs 1-41 into this claim.

43. To enforce a claim for *promissory estoppel* in Vermont, a plaintiff must show [a] promise which the promisor should reasonably expect to induce action or forbearance

on the part of the promisee and which does induce such action or forbearance and that injustice can be avoided only by enforcement of the promise.

44. Courts enforce such promises and hold an employer bound by the promise in the context of a wrongful termination action where there is a promise of a specific and definite nature.

45. In other words, in certain circumstances a promise may be enforced as a contract and, if violated, warrant related monetary damages.

46. When defendants and the plaintiff agreed on the terms of their employment relationship, defendants' promise of health coverage for him should his spouse become pregnant was an integral and enforceable part of the agreement.

47. When defendants promised its employees a "performance grace period" and "performance improvement plan," it created a reasonable expectation for the plaintiff that he would receive warnings about any alleged performance deficiencies.

48. Defendant expressed a specific and definite promise to the plaintiff that he would have health care coverage should his spouse become pregnant.

49. The plaintiff relied on the promise and accepted employment with defendants.

50. When defendants learned that the plaintiff's spouse was pregnant, it dismissed him from employment.

51. Defendants reneged on their promise of a "performance grace period" and "performance improvement plan" by terminating plaintiff without notice.

52. Defendants recanted its binding promise of health care coverage.

53. Defendants denied the plaintiff the health coverage it had promised him.

54. Defendants are estopped from denying health coverage for the plaintiff.

55. When defendants dismissed the plaintiff because his spouse was pregnant it also denied him of the compensation and benefits it promised to induce him to accept the employment.

56. For the defendants' breach of the binding promise, the plaintiff demands judgment against them and an award of monetary damages and an award for loss of income and benefits, company stock career setback and damages, emotional distress, as well as pain and suffering.

<u>**PLEASE NOTE: THE PLAINTIFF DEMANDS A TRIAL BY JURY**</u>

DATED: <u>March 4, 2023</u>   .                    **MATTHEW HENDERSON, PLAINTIFF**

By: _____

Norman E. Watts, Esq.
Watts Law Firm, PC
Counsel for Plaintiff

Watts Law Firm, P.C. PO Box 270, Quechee, VT 05059
Phone (802) 457-1020, Fax (802) 369-2172, Email: info@wattslawvt.com